**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRISTOBAL CASTILLO, | 1:13-CV-00412-LJO-BAM |
| Plaintiff, | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| v. | (Docs. 34) |
| GAIL GARRETT, JBT PROPERTY MANAGEMENT COMPANY, INC.,  and DOES 1 – 30, | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Cristobal Castillo ("Castillo") brings this action against his former employer JBT Property Management Company, Inc. ("JBT") and Gail Garrett ("Garrett") for race, color, national origin, and age discrimination, retaliation, unfair competition, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision.  Before the Court is Defendant JBT's motion for summary judgment of Castillo's complaint.  For the reasons discussed below, the Court GRANTS JBT's motion for summary judgment of Castillo's complaint in its entirety.

**BACKGROUND**

**A.    Facts Alleged in First Amended Complaint**

Castillo is a Latino male from El Salvador and is 56 years old.  Castillo was employed by JBT as a maintenance technician from 2010 until his termination on September 7, 2012.

Castillo alleges that Garrett, another JBT employee, made comments to Castillo regarding age and stated that JBT needed to hire new employees who were young because they could work in the

1

sun.

Castillo alleges that JBT on two occasions terminated older Hispanic employees and replaced them with employees who were younger and/or Caucasian.

Castillo alleges that he complained to Garrett and to JBT maintenance supervisor James Heistand ("Heistand"). Specifically, Castillo alleges he complained to Heistand about Garrett's remarks and that he complained to Garrett about the terminations of older JBT employees.

Castillo alleges that Garrett was upset and angry about Castillo's complaints and that Garrett treated him differently from similarly situated Caucasian employees on the basis of Castillo's race and in retaliation for Castillo's complaints. Castillo alleges that Garrett failed to make Castillo a supervisor even though he was employed as a supervisor by his previous employer and his previous employer recommended him for a supervisory position. Instead, Garrett made Heistand, who is Caucasian, a supervisor.

Castillo alleges that he began receiving false negative performance evaluations from Garrett in or around 2011 and that his previous evaluations have been positive. Castillo alleges that Garrett gave him false negative evaluations in retaliation for his complaints and because of his race, color, national origin, and age. Specifically, Castillo alleges that, in or about 2011, Garrett falsely accused Castillo of excessive absences and issued false negative performance evaluations to Castillo. In the same evaluation, Garrett also allegedly falsely accused Castillo of having to be reminded of time constraints and his other job responsibilities, of self-prioritizing tasks based on what he enjoys doing rather than the needs of the property at which he worked, of difficulties in getting along with some of his co-workers, and of challenging Garrett's authority. Castillo alleges the false negative evaluations were a pretext for terminating him on the basis of his age, race, color, and national origin.

On September 7, 2012, shortly after Castillo called in sick on Labor Day, JBT terminated Castillo from employment.

**B.  Procedural History**

Castillo filed his original complaint in this case on March 19, 2013. (Doc. 1). This Court granted Castillo's motion to proceed *in forma pauperis* on March 26, 2013. (Doc. 5). Castillo filed the operative first amended complaint on September 16, 2013. Defendants filed an answer to the operative

1   complaint on October 2, 2013.  (Doc. 15).  On January 14, 2014, this Court on the basis of Castillo's
2   notice of voluntary dismissal under Fed. R. Civ. P. 41 dismissed without prejudice all claims against
3   Defendant Garrett.  (Doc. 30).

4       On July 17, 2014, JBT filed the instant motion for summary judgment as to Castillo's
5   complaint.  (Doc. 34).  Castillo filed an opposition to the motion for summary judgment on July 31,
6   2014.  JBT filed a reply on August 7, 2014.

7                                   **DISCUSSION**

8                           **Motion for Summary Judgment**

9   **A.    Legal Standard**

10      Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary
11  judgment on all or part of the claim."  "A district court may dispose of a particular claim or defense by
12  summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or
13  defense."  *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

14      Summary judgment is appropriate when there exists no genuine issue as to any material fact
15  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); *Matsushita
16  Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.
17  Contractors Assn*., 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to "pierce
18  the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita
19  Elec*., 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401,
20  1405 (9th Cir. 1985).

21      The evidence of the party opposing summary judgment is to be believed, and all reasonable
22  inferences that may be drawn from the facts before the court must be drawn in favor of the opposing
23  party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587.  The
24  inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or
25  whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–
26  252.

27      To carry its burden of production on summary judgment, a moving party "must either
28  produce evidence negating an essential element of the nonmoving party's claim or defense or show

that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see, High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see, Adickes v. S. H. Kress & Co*., 398 U.S. 144, 160 (1970). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see, High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see, Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co*., 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

"In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some

parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also, Robi v. Five Platters*, Inc., 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

**B.    Analysis**

Castillo brings eleven causes of action under state and federal law against JBT.

Castillo alleges that JBT unlawfully discriminated against him on the basis of his race, color, national origin, and age in violation of 42 U.S.C. § 2000 et seq. ("Title VII"), California's Fair Employment and Housing Act, Cal. Gov. Code § 12900 et seq. ("FEHA"), and Article I, § 8 of the California Constitution. Castillo alleges that JBT unlawfully discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and that JBT aided and abetted discrimination in violation of FEHA.

Castillo further alleges that JBT unlawfully retaliated against him for expressing opposition to JBT's discriminatory conduct.

Castillo also alleges that JBT violated 42 U.S.C. § 1981 by subjecting Castillo to discrimination on the basis of race, color, national origin, and age and by retaliating against him.

In addition, Castillo alleges that JBT engaged in negligent supervision and failure to train employees.

Finally, Castillo alleges that JBT engaged in unfair competition in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), and brings claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") against JBT.

### 1.    Discrimination Claims

#### i.    Title VII[1]

---

[1] JBT argues that this Court lacks jurisdiction over Castillo's Title VII claims relating to race or color because the "Race" and "Color" boxes were not checked in his EEOC charge of discrimination. In Castillo's charge, he checks the "National Origin" box and states that "I believe I have been discriminated against on the basis of my age (55) and national origin (Hispanic), in violation of [the ADEA and Title VII]." (Doc. 34 Exh. B). Castillo's claims for race and color

5

In his first cause of action, Castillo alleges that JBT discriminated against him on the basis of his race, color, national origin, and age.

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C.A. § 2000e-2(a)(1).

Specifically, Castillo alleges that JBT engaged in unlawful discrimination by "harassing him and by failing to remediate co-worker harassment against him, undermining his supervisorial authority, threatening him with adverse action, subjecting him to false negative performance appraisals, removing him from his job, replacing him with a less qualified, younger white male, all without justification, in violation of Title VII[.]"  (Compl. § 35).

The language of the anti-discrimination provision in Title VII on its face does not protect against age-based discrimination.  42 U.S.C.A. § 2000e-2(a)(1).  Moreover, the Ninth Circuit has held that the exclusive enforcement mechanism under federal law for workplace age discrimination claims was the ADEA.  *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1058 (9th Cir. 2009) ("The comprehensive remedial scheme of the ADEA demonstrates that Congress intended the ADEA to serve as the exclusive means for pursuing claims of age discrimination in employment.").  Therefore, the Court will address Castillo's remaining allegations of discrimination on the basis of race, color, and national origin in violation of Title VII.  These allegations can be grouped into a hostile work environment claim and a disparate treatment claim.

## 1.      Hostile Work Environment Claim

Castillo alleges that JBT created a hostile work environment on account of his race, color, and national origin by harassing him and failing to remediate harassment against him.  (Compl. § 35).

To establish the *prima facie* hostile work environment claim under either Title VII Castillo must raise a triable issue of fact as to whether (1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or

---

discrimination can be reasonably expected to grow out of his statement on his charge that he believes he was discriminated against because he is "Hispanic."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  Therefore, the Court does not lack jurisdiction over Castillo's claims for race and color discrimination in violation of Title VII.

pervasive to alter the conditions of his employment and create an abusive work environment. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotations and citations omitted). The Supreme Court has instructed that "[w]orkplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998); *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 23 (1993)). "Hence, 'a recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id*. (quoting *Faragher*, 524 U.S. at 788).

Castillo alleges no facts and offers no evidence to show that JBT engaged in harassment against him on account of his race, color, and national origin. Castillo alleges that JBT had policy of speaking English only at the workplace. However, Castillo fails to show how this constitutes harassment on the basis of race, color, or national origin. Castillo also summarily alleges that Garrett "singled out Plaintiff's race" and "subjected him to harassment, retaliation, and a hostile work environment[.]" (Compl. ¶ 21). Castillo offers no evidence as to any racially motivated acts of harassment that Garrett committed against him.

Castillo fails to allege any relevant facts or to provide any evidence to show that JBT subjected him to any harassment, let alone severe or pervasive harassment, on the basis of his race, color, or national origin. Therefore, Castillo comes nowhere close to establishing a *prima facie* case of harassment under Title VII.

### 2.    Disparate Treatment Claim

Castillo further alleges that JBT discriminated against him by "undermining his supervisorial authority, threatening him with adverse action, subjecting him to false negative performance appraisals, removing him from his job, replacing him with a less qualified, younger white male, all without justification, in violation of Title VII[.]" (Compl. § 35). These allegations "may be analyzed under the disparate treatment model, which applies when an individual [has been] singled out and

treated less favorably than others similarly situated on account of [race, color, sex, or national origin]." *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988) (internal quotation and citation omitted).

The Ninth Circuit has adopted the *McDonnell Douglass* burden-shifting test in evaluating disparate treatment cases:

> In order to prevail in a Title VII disparate treatment case, a plaintiff must first establish a *prima facie* case of discrimination.  The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision.  If the defendant carries its burden, the plaintiff is then afforded an opportunity to demonstrate that the "'assigned reason' was 'a pretext or discriminatory in its application.

*Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1358-59 (9th Cir. 1985) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)).  "However, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Pejic*, 840 F.2d at 672 (quoting *Texas Dep't. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, (1981); *Casillas v. United States Navy*, 735 F.2d 338, 342 (9th Cir.1984)).  "Direct or circumstantial proof of discriminatory motive is required."  *Pejic*, 840 F.2d at 672  (internal quotation and citation omitted).  "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998).

Castillo appears to complain of three instances of disparate treatment by JBT.  The Court will address them accordingly.

### a.   **Maintenance Supervisor Position**

Castillo testified that he was the maintenance lead at his prior place of employment, and that JBT denied him the position of maintenance lead when he began employment for JBT.  (Castillo Dep. 30:2-33:21).  JBT hired another individual, JH, who is Caucasian for the position of maintenance supervisor.  *Id.*

Assuming with deciding that Castillo establishes a *prima facie* case of discrimination on the basis of race, color, and national origin, JBT puts forth a legitimate nondiscriminatory reason for hiring JH as maintenance supervisor, and Castillo fails to demonstrate that the reason was pretext or

discriminatory in its application. *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807.

Matt Dobbins ("Dobbins") is and has been the President of JBT at all relevant times. Dobbins testified that JH was previously employed as a maintenance supervisor, and that he hired JH as maintenance supervisor at JBT based on his qualifications, in-person interview, and positive endorsement from JH's previous employer. (Dobbins Dep. ¶ 7). JBT also provides as evidence Castillo's application for employment at JBT. (Doc. 34 Exh. L). Castillo's application shows that his "Position Desired" at JBT was "Maintenance Tech" and not maintenance supervisor or maintenance lead. *Id*. Dobbins further testified that, after JH voluntarily resigned from JBT, Dobbins determined that the maintenance supervisor position was unnecessary and therefore did not hire anyone to fill the supervisor position for the duration of Castillo's employment. (Dobbins Dep. ¶ 7). JBT therefore carries its burden of providing a legitimate nondiscriminatory reason for not hiring Castillo as maintenance supervisor. Castillo, however, alleges no facts and provides no evidence to show that JBT's proffered reasons were pretext or discriminatory in their application. *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807.

### b.   Negative Performance Evaluations and Warnings

Castillo alleges that he received positive performance evaluations from JBT through 2010, and that, starting in or about 2011, he started receiving negative evaluations from Garrett. (Compl. ¶ 23). Castillo asserts that the negative evaluations were "false" and were "because of Plaintiff's race, color, [and] national origin[.]" (Compl. ¶ 24).

However, the evidence shows that Castillo was given two performance evaluations during his employment at JBT and neither of them was negative. (Doc. 34 Exhs. M, N). Castillo's 30-day performance review from Garrett, dated August 12, 2010, rated his job performance as "Standard" in all categories. (Doc. 34 Exh. M). Castillo's annual performance evaluation from Garrett, dated April 26, 2011, ranked him as "Good" or "Satisfactory" in all categories. (Doc. 34 Exh. N).

The evidence also shows that, on Castillo's annual performance evaluation, under "Comments" in the "Attendance and punctuality" category, Garrett wrote that "Your attendance is starting to suffer. You are using your vacation time because you have used all your sick time. This is considered excessive. (See attached schedule of vacation & sick accruals." (Doc. 34 Exh. N). Garrett

also wrote the following under "Comments:" "I have to remind you of time constraints an your other job responsibilities;" "Please remember that I am your direct supervisor and you should not challenge my authority.  If you have a problem we can discuss it;" and "You have a tendency to self-prioritize tasks based on what you enjoy doing rather than according to the needs of the property."[2]  *Id*.  Castillo alleges that Garrett "falsely accused" him of the above "because of his race color, [and] national origin."  (Compl. ¶¶ 25-26).  However, Castillo alleges no facts and presents no evidence to show that Garrett's comments on his annual performance evaluation were made on account of his race, color, or national origin, or that similarly situated employees of another race, color, or national origin were assessed differently in their performance evaluations.

Accordingly, Castillo fails to establish a *prima facie* case of discrimination on the basis of race, color, or national origin in this performance evaluations by JBT.  *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807.

c.    **Termination**

Castillo alleges that his termination from employment at JBT constitutes disparate treatment on account of his race, color, and national origin in violation of Title VII.  (Compl. ¶ 27).

Even if Castillo can establish a *prima facie* case of disparate treatment, JBT presents evidence of a legitimate non-discriminatory reason for Castillo's termination, and Castillo fails to present evidence to show that the reason was pretext.  *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807.

JBT presents evidence to show that Dobbins, the President of JBT, ultimately made the decision to terminate Castillo "based on his continued absences."  (Doc. 34 Exh. G ¶ 16).  In his declaration, Dobbins stated that he noticed in or around June 2011 that maintenance technicians at the property where Castillo worked were falling behind in work orders and move-outs because he received purchase orders showing that management was hiring outside vendors to complete work that should have been performed by maintenance technicians.  *Id*. at ¶ 12.  Dobbins obtained a breakdown of

---

[2] The Court notes that, despite the comments, Garrett nonetheless rated Castillo's performance as "Good" or "Satisfactory" in each category, and gave Castillo positive comments, including the following: "I feel that you understand the importance of the job;" "You keep a clean work space when doing your job;" and "I feel you are very organized when it comes to taking care of your tools."  (Doc. 34 Exh. N).

absences for three maintenance technicians, including Castillo, who had taken absences for illness or doctor's appointments in excess of their accrued sick leave from Judith Rhea ("Rhea") who was responsible for payroll. *Id.* Dobbins met jointly with the three maintenance technicians, including Castillo, on July 14, 2011 to discuss the importance of attendance and to establish that continued absences would not be tolerated. *Id.* at ¶ 13. At that time, Castillo had already received a warning regarding his attendance and that using his vacation time because he had used all of his sick time was considered excessive. (Doc. 34 Exh. N). One of the other maintenance technicians with noted attendance issues, "ET," had made it known to JBT during the hiring process that he has a medical condition that JBT determined was protected by state and federal law and for which JBT agreed to provide reasonable accommodation in the form of a certain amount of days off. (Doc. 34 Exh. H ¶ 14). The other maintenance technician with noted attendance issues, "MM," immediately showed improvement and did not exceed available sick leave at any time after he received the warning about attendance. *Id.* at ¶ 15. JBT presents evidence that, unlike MM, Castillo's attendance did not improve and that he continued to take time off above and beyond his accrual. *Id.* Castillo was scheduled to work on Labor Day, September 5, 2011. (Doc. 34 Exh. G. ¶ 14). On the morning of September 5, 2011, Castillo called in sick to work. *Id.* When Garrett notified Dobbins that Castillo had called in sick, Dobbins reviewed Castillo's personnel file and time records. *Id.* at ¶ 15-16. Dobbins found that Castillo had already exceeded his available sick leave by more than twenty hours in 2011 and that, as soon as Castillo accrues enough sick leave to cover a day off, he calls in sick. *Id.* Dobbins felt this was a pattern and that Castillo's calling in sick on a holiday was suspicious. *Id.* Dobbins therefore made the ultimate decision to terminate Castillo based on his continued absences. *Id.* Dobbins stated in this declaration that "[i]t was and is unacceptable to me that [JBT] had to hire outside vendors to perform the primary duties of our employees[,] and I determined that we needed someone in the position of maintenance technician who could demonstrate regular and reliable attendance, something that Mr. Castillo did not do." *Id.* at ¶ 16.

Castillo presents no evidence to show that JBT's proffered nondiscriminatory reasons for his termination are pretext or discriminatory in their application. *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807. In fact, JBT introduces evidence to show that four employees were

terminated during Castillo's employment at JBT, and that Castillo was the only terminated employee who is Hispanic.  (Doc. 34 Exh. H ¶¶ 16-17).

For the reasons discussed above, Castillo fails to show a genuine issue of material fact in his claims for disparate treatment on account of race, color, or national origin in violation of Title VII under the *McDonnell Douglass* burden-shifting framework.  *Diaz*, 752 F.2d at 1358-59; *McDonnell Douglas*, 411 U.S. at 807.  Castillo also fails to establish a *prima facie* case of hostile work environment on account of his race, color, or national origin in violation of Title VII.  Accordingly, JBT's motion for summary adjudication as to Castillo's first cause of action under Title VII is GRANTED.

ii.      **FEHA**

In his fifth cause of action, Castillo alleges that JBT created a hostile work environment and subjected him to disparate treatment on account of his race, color, national origin, and age in violation of California's FEHA.  (Compl. ¶ 51).

In his seventh cause of action, Castillo alleges that JBT aided and abetted discrimination and a hostile work environment in violation of FEHA.  (Compl. ¶ 56).

JBT argues that Castillo's FEHA claims fail because Castillo failed to exhaust administrative remedies as required to bring an action under FEHA.  "'Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with DFEH.'"  *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (Cal. Ct. App. 2014) (quoting *Wills v. Superior Court*, 195 Cal.App.4th 143, 153 (2011)).  "Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters."  *Id.*  (citing *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 492 (1996)).  It is undisputed that Castillo filed a charge of discrimination with the EEOC and received a right-to-sue notice from the EEOC.  However, there is no evidence that Castillo filed a complaint with the Department of Fair Employment and Housing ("DFEH"), and Castillo does not allege that he ever filed such a complaint.  California courts have held that an EEOC right-to-sue notice does not satisfy administrative exhaustion requirements for the California FEHA.  *Dang v. Solar Turbines Inc.*, 452 F. App'x 804 (9th Cir. 2011) (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718 (Cal. Ct. App. 1994).

12

Therefore, Castillo's right-to-sue letter from the EEOC is insufficient to show that he exhausted his administrative remedies as required to bring a civil case under FEHA.

Because Castillo fails to raise a genuine issue of material fact as to his failure to exhaust administrative remedies as to his FEHA claims, JBT's motion for summary adjudication as to Castillo's fifth and seventh causes of action under FEHA is GRANTED.

iii.   <strong>ADEA</strong>

The ADEA makes it unlawful for "an employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a).  The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]"  29 U.S.C. § 630(b).

JBT submits as evidence Employment Development Department ("EDD") Reports from JBT to the state of California showing that, from the quarter ending June 30, 2010 through the quarter ending December 31, 2011, JBT never employed more than seventeen employees.  (Doc. 34 Exh. T).  Dobbins, the President of JBT, also stated in his deposition that JBT has never employed more than seventeen employees.  (Doc. 34 Exh. G ¶ 8).  Castillo presents no evidence to contradict either of these.

Therefore, there is no genuine issue of material fact that the ADEA does not apply to JBT because JBT is not an "employer" under the definition of the ADEA.   29 U.S.C. § 630(b).  Accordingly, JBT's motion for summary adjudication as to Castillo's fourth cause of action under the ADEA is GRANTED.

2.   <strong>Retaliation Claim</strong>

In his second cause of action, Castillo alleges that JBT retaliated against him for expressing opposition to discrimination in the workplace in violation of Title VII.  (Compl. ¶ 43).

"[C]laims for Title VII retaliation are subject to the *McDonnell Douglas* burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury."  *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1129 (D. Idaho 2012) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (9th Cir. 1994)).

"To make out a *prima facie* case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner*, 25 F.3d at 1464).

Castillo fails to show that he engaged in any protected activity. Making an informal complaint to a supervisor is a protected activity. *Id.* at n. 3 (internal citation omitted). An employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he complained about was not legally cognizable. *Id.* Here, Castillo's alleged protected activity is that, on one occasion, he complained about Garrett's conduct to Dobbins. (Castillo Dep. pp. 64-66). Castillo testified that he complained to Dobbins that Garrett "was rude[.]" *Id.* at p. 64. Castillo testified that he never expressed to Dobbins that Garrett's comments were discriminatory or were related to Castillo's age. *Id.* Castillo testified that he told Dobbins that "she was just rude, that was all." *Id.* at p. 66. Castillo also testified that Garrett made racial remarks regarding Indian, Chinese, and African American people, but that he never complained to anyone about Garrett's race-related remarks. *Id.* at p. 88. Therefore, none of Castillo's conduct amounts to any protected activity.

Because Castillo fails to establish a *prima facie* case for retaliation, JBT's motion for summary adjudication as to Castillo's second cause of action for retaliation in violation of Title VII is GRANTED. *Steiner*, 25 F.3d at 1464.

> 3. **42 U.S.C. § 1981**

In his third cause of action, Castillo alleges that, "[i]n subjecting Plaintiff to racial, color, national origin, and age discrimination and retaliation, Defendants deprived Plaintiff of his civil rights, in violation of the U.S. Constitution and 42 U.S.C. § 1981." (Compl. ¶ 45).

The Ninth Circuit applies the *McDonnell Douglas* burden-shifting framework for Title VII and § 1981 claims. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (citing *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007)). The Court's analyses of Castillo's claims for discrimination and retaliation under Title VII therefore equally apply to Castillo's claims for discrimination and retaliation under § 1981. For the same reasons that Castillo's Title VII claims fail

14

to survive summary judgment, Castillo's § 1981 claims likewise are insufficient.

Accordingly, JBT's motion for summary adjudication as to Castillo's third cause of action for discrimination and retaliation under 42 U.S.C. § 1981 is GRANTED.

### 4.   Claims Related to Discrimination

#### i.   Negligent Supervision/Failure to Train

In his eleventh cause of action, Castillo alleges that JBT engaged in negligent supervision and failed to train its employees regarding discrimination, disparate treatment, retaliation, and hostile work environment and caused Castillo injury.  (Compl. ¶¶ 81-91).

The basic elements required for an action in tort under California law are similar to those required elsewhere; a plaintiff must establish that a duty to use care was owed plaintiff by defendant; that the duty owed was breached; that the breach was a proximate cause of harm to plaintiff; and that plaintiff was in fact damaged.  *See*, *generally*, 4 Witkin, Summary of California Law (8th ed. 1974), "Torts."  Castillo makes no allegations as to the alleged discrimination he suffered in this cause of action that is in addition to his Title VII, FEHA, § 1981, and ADEA allegations.  (Compl. ¶¶ 81-91). As discussed above, Castillo fails to provide evidence to create a genuine issue of material fact as to whether he suffered discrimination, disparate treatment or hostile work environment.   Therefore, Castillo cannot show that he was in fact damaged by JBT's alleged failure to train its employees regarding discrimination, disparate treatment, retaliation, and hostile work environment.   Castillo likewise cannot show any alleged wrongful conduct by JBT was the proximate cause of harm to Castillo resulting from discrimination, disparate treatment or hostile work environment.

Because Castillo fails to show a genuine issue of material fact as to two essential elements of a tort claim under California law, JBT's motion for summary adjudication as to Castillo's eleventh cause of action for negligent supervision and failure to train is GRANTED.

#### ii.   California Constitution Art. I § 8/Wrongful Termination

In his sixth cause of action, Castillo alleges that JBT discriminated against him "on the grounds of his race, color, national origin, and age" and thereby deprived him "of equal employment opportunity and of the rights, privileges, and opportunities guaranteed under the Constitution of the State of California."  (Compl. ¶ 54).

15

The constitutional provision cited by Castillo in his sixth cause of action, Article I § 8, provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Cal. Const. art. I, § 8.  Article I § 8 does not protect against disqualification based on age.

The Ninth Circuit has instructed that "a claim brought directly under Article I, § 8 of the California Constitution may only be brought where a plaintiff has been denied entrance into a profession or particular employment or terminated from the same." *Strother v. S. California Permanente Med. Grp*., 79 F.3d 859, 871 (9th Cir. 1996).  California courts also have held that Article I § 8 may support a wrongful discharge in violation of public policy claim. *Sistare-Meyer v. Young Men's Christian Assn*., 58 Cal. App. 4th 10, 14 (Cal. Ct. App. 1997); *Phillips v. St. Mary Reg'l Med. Ctr*., 96 Cal. App. 4th 218, 230 (Cal. Ct. App. 2002) ("Courts have found Section 8 as an alternative source of public policy for wrongful termination claims.  Section 8 reflects fundamental and firmly established public policy against employment discrimination based on certain classifications including race and sex.") (internal citation omitted).

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc*., --- Cal.Rptr.3d ----, G048013, 2014 WL 4198060 (Cal. Ct. App. Aug. 26, 2014) (citing *Haney v. Aramark Uniform Services, Inc*. 121 Cal.App.4th 623, 641 (Cal. Ct. App. 2004)).

Even if Castillo can show the first two elements, Castillo fails to provide evidence to demonstrate a genuine issue of material fact as to whether his termination was substantially motivated by discriminatory animus as to his race, color, or national origin.  As discussed above, JBT presents evidence that Dobbins made the decision to terminate Castillo on the basis of his continued excessive absences, despite having received prior warnings from both Garrett and Dobbins as to his attendance issues.  (Doc. 34 Exh. G).  Castillo presents no evidence to show that Dobbins was motivated to any extent by Castillo's race, color, or national origin in Dobbins' decision to terminate Castillo.  Accordingly, JBT's motion for summary adjudication as to Castillo's sixth claim for wrongful

termination in violation of public policy as established by Article I § 8 of the California constitution is GRANTED.

### 5. Other Claims

#### i. UCL

In his eighth cause of action, Castillo alleges that JBT engages in unlawful, unfair, and fraudulent business practices in violation of California's UCL. (Compl. ¶¶ 58-65).

As discussed above, Castillo fails to raise a genuine issue of material fact as to whether any of JBT's conduct constituted or resulted in unlawful discrimination or retaliation. Castillo alleges no additional facts in this cause of action and presents no additional evidence. Therefore, there is no evidence to show that JBT's practices were unlawful.

California courts have held that an employer who engages in discrimination also may be engaging in unfair business practices. *Herr v. Nestle U.S.A., Inc*., 109 Cal. App. 4th 779, 782 (2003) ("An employer which practices age discrimination has an unfair competitive advantage over employers who comply with the FEHA because older workers frequently are more highly compensated than their younger colleagues."). However, Castillo fails to present any evidence to show that JBT's practices are discriminatory in any way. Therefore, Castillo fails to raise a genuine issue of material fact as to whether JBT engages in unfair business practices.

The definition of fraudulent business practices within the meaning of the UCL is "straightforward and established." *Morgan v. AT & T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009). A fraudulent business practice is one in which "'members of the public are likely to be 'deceived.'" *Id*. (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)). "A UCL claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but '"also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.'" *Id*. at 1255 (quoting *McKell v. Washington Mutual, Inc*., 142 Cal.App.4th 1457, 1471 (Cal. Ct. App. 2006)). Castillo alleges that JBT engages in "deceptive business practices" by hiring, managing, and terminating employees in a way that discriminates against older and minority employees and retaliates against employees who complain about discrimination. (Compl. ¶ 60). Again, as discussed above, Castillo fails to present any evidence to show that JBT's practices are

discriminatory or retaliatory.  Further, Castillo alleges no facts to show how JBT's alleged practices are likely to mislead or deceive members of the public.  *Morgan*, 177 Cal. App. 4th at 1254-55.

Because Castillo fails to raise a genuine issue of material fact as to whether JBT engages in unlawful, unfair, or fraudulent business practices in violation of the UCL. JBT's motion for summary adjudication as to Castillo's eighth cause of action is GRANTED.

ii.     **Intentional Infliction of Emotional Distress**

In his ninth cause of action, Castillo brings a claim for intentional infliction of emotional distress against JBT.  Castillo alleges that JBT's "conduct set forth hereinabove was extreme and outrageous" and was "intended to humiliate Plaintiff and to convey the message that he was powerless to defend his rights."  (Compl. ¶ 68).  Castillo further alleges that "[a]s a proximate result of the acts alleged above, Plaintiff suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body[.]"  (Compl. ¶ 71).

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, (2009) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993); *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991)).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Id* at 1050-51 (quoting *Potter*, 6 Cal.4th at 1001).  "And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'"  *Id.* at 1051 (quoting *Potter*, 6 Cal.4th at 1001).  "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* (internal quotation and citations omitted).

Castillo fails to show that JBT engaged in extreme and outrageous conduct.  In support of this claim, Castillo alleges no additional facts and simply references his prior allegations.  In summary, the "extreme and outrageous" conduct Castillo alleges consists of: 1) one occasion when Garrett stated that Castillo was only at JBT "as a favor;" 2) "several" occasions when Garrett stated to him that she

wanted JBT to hire younger workers who can work in the sun; 3) Garrett's comments regarding Castillo's work performance in his annual performance evaluation where she ranked him "Good" or "Satisfactory" in each category; and 4) Dobbins' termination of Castillo for his continued excessive absences.  (Castillo Dep. pp. 43-44, 49-57; Doc. 34 Exhs. N, G).  Castillo failed to present any evidence to show that Garrett's comments on Castillo's work performance were motivated by discriminatory animus or that Dobbins' decision to terminate Castillo was based on anything other than Castillo's ongoing attendance problem.  Further, Garrett's statements to Castillo could not be said to amount to conduct "so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes*, 46 Cal. 4th at 1050-51 (quoting *Potter*, 6 Cal.4th at 1001).  Rather, they are precisely the sort of "insults, indignities, [or] petty oppressions" that categorically fail to support intentional infliction of emotional distress claims.  *Id.*  Moreover, "[a] plaintiff's subjective belief that his termination was unnecessary or unwarranted is not sufficient to create a genuine issue of material fact." *Haley v. Cohen & Steers Capital Mgmt., Inc.*, 871 F. Supp. 2d 944, 953 (N.D. Cal. 2012) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir. 2006)).

Because there is no genuine issue of material fact as to Castillo's failure to establish the first required element of an intentional infliction of emotional distress claim, JBT's motion for summary adjudication as to Castillo's ninth cause of action is GRANTED.

### iii.      **Negligent Infliction of Emotional Distress**

In his tenth cause of action, Castillo brings a claim for negligent infliction of emotional distress against JBT.  Castillo alleges that JBT "deprived Plaintiff of his rights guaranteed under [Title VII, 42 U.S.C. § 1981, ADEA, FEHA, and the California Constitution] and wrongfully terminated him from his employment, as described herein, negligently inflicting emotional distress on Plaintiff[.]" (Compl. ¶ 74).

"Negligent infliction of emotional distress, which is simply the tort of negligence, contains the traditional elements of duty, breach of duty, causation and damages."  *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 107 (1992) (citing *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992)). The California Supreme Court has "made it clear that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show

1   that the emotional distress was 'serious.'" *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010)

2   (citing *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 927-30 (1980)).  The Court explained

3   that, "'serious emotional distress may be found where a reasonable man, normally constituted, would

4   be unable to adequately cope with the mental stress engendered by the circumstances of the case.'"

5   *Molien*, 27 Cal.3d at 928 (quoting *Rodrigues v. State*, 472 P.2d 509, 520 (1970)).

6           Even assuming Castillo can show that JBT breached a duty it owed to him, he fails to show

7   that he suffered "serious emotional distress" as defined by the California Supreme Court.  *Id*.  As

8   discussed  above,  the  evidence  as  to  JBT's  conduct  does  not  support  Castillo's  claims  for

9   discrimination,  retaliation,  or  wrongful  termination.    Specifically,  when  asked  what  acts  JBT

10  committed had caused him emotional distress, Castillo testified that the only conduct by JBT that

11  caused him emotional distress was terminating him.  As discussed above, there is no evidence that

12  Castillo's termination was discriminatory, retaliatory, or unlawful or improper in any way.  The

13  evidence shows that Dobbins terminated Castillo due to his ongoing attendance problems.  (Doc. 34

14  Exhs. G, H).  Moreover, there is simply no evidence that JBT engaged in any conduct that would have

15  subjected a reasonable man, normally constituted, to mental stress with which he would be unable to

16  adequately cope.  *Molien*, 27 Cal.3d at 928 (quoting *Rodrigues*, 472 P.2d at 520).

17          Because there is no genuine issue of material fact that Castillo fails to establish he suffered

18  serious emotional distress as required for a negligent infliction of emotional distress claim, JBT's

19  motion for summary adjudication as to Castillo's tenth cause of action is GRANTED.

20          "In analyzing a motion for summary judgment, the district court reviews the evidence to

21  determine not merely whether there is a factual dispute between the parties, but whether there is a

22  *genuine* factual dispute."  *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991)

23  (emphasis in the original).  "A factual dispute is genuine only 'if the evidence is such that a reasonable

24  jury could return a verdict for the nonmoving party.'"  *Id*. at 473 (quoting *Anderson*, 477 U.S. at 248).

25  In this case, Castillo has failed to provide any evidence such that a jury could return a verdict in his

26  favor as to any of his eleven causes of action.  Accordingly, JBT's motion for summary judgment of

27  Castillo's amended complaint in its entirety is GRANTED.

28

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court:

1.    GRANTS Defendant JBT Property Management Company Inc.'s motion for summary judgment as to Plaintiff Cristobal Castillo's complaint; and

2.    ORDERS the Clerk of Court to enter judgment in favor of Defendant JBT and against Plaintiff Castillo and to close the case.

IT IS SO ORDERED.

Dated:   **September 24, 2014**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE